United States Courts
Southern District of Texas
FILED

December 19, 2023

Nathan Ochsner, Clerk of Court

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| Khevaja Nazimuddin, Plaintiff | § | |
| v. | § | CIVIL ACTION NO. |
| WELLS FARGO BANK N.A., Defendant | § | |

## VERIFIED COMPLAINT

## ELECTRONIC FUND TRANSFER ACT

## JURY TRIAL DEMANDED

## INTRODUCTION

1. Congress has found that the primary purpose of the Electronic Funds Transfer Act is "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in the electronic fund and remittance transfer systems. The primary objective of this subchapter, however, is the provision of individual consumer rights."

2. This action arises out of violations of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693 et seq and its implementing Regulation E by the

defendant and its agents in their illegal transfers of funds from the plaintiff's bank account.

3. The Plaintiff seeks actual damages, statutory damages, expenses incurred prior to retaining an attorney, costs, and attorney fees. The plaintiff will be retaining an attorney to match the intelligence of Wells Fargo Bank's attorney.

## JURISDICTION

4. Jurisdiction of this Court arises under 15 U.S.C. § 1693m.

5. Venue is the SOUTHERN DISTRICT OF TEXAS and is proper because the acts and transactions occurred therein, Plaintiff resides therein, and Defendant transacts business therein.

6. Defendant has transacted business within the State of Texas by providing banking services to Plaintiff via the U.S. Postal Service, telephone, and Internet while Plaintiff was located within and permanently residing within the State of Texas.

## PARTIES

7. Plaintiff (hereinafter "Plaintiff") is a natural person who resides in the City of Tomball, County of Harris, State of Texas, and a "consumer" as that term is defined by 15 U.S.C. § 1693a and 12 CFR § 1005.2(e). He is also not an attorney. References to "I", "me", and "my" are pronoun references to Plaintiff.  Plaintiff is not an attorney.

8. Plaintiff has suffered an injury in fact that is fairly traceable to Defendant's conduct and is likely to be redressed by a favorable decision in this matter.

9. Defendant, Wells Fargo Bank, N.A. (hereinafter "Defendant or WFB), is a
national bank and a covered "financial institution" under EFTA 15 U.S.C. §
1693a(9)'. Defendant Wells Fargo Bank, N.A. (hereinafter "Defendant") is a
national bank and a covered "financial institution" under EFTA 15 U.S.C.
§1693a(9), with a principal of business located at  420 Montgomery Street, San
Francisco, California 94104. Defendant does business in the State of Texas and in
the Southern District of Texas and can be served with process by the Secretary of
State for Texas or through its registered agent Corporation Service Company, 211
E. 7th Street, Suite 620, Austin, Texas, 78701-3218 USA as listed by the Texas
Secretary of State Office. It is an entity covered by 15 U.S.C. § 1693 and under
Regulation E, 12 C.F.R 1005.2.

## FACTUAL ALLEGATIONS

10. Within one year immediately preceding the filing of this complaint, Defendant
initiated and/or attempted to initiate certain electronic funds transfers from
Plaintiff's bank accounts to unknown third-party identity thieves, which were
"electronic funds transfers" as that term is defined by 15 U.S.C. § 1693a(7).


11. Defendant holds accounts belonging to Plaintiffs and has issued access devices
with an explicit agreement to perform electronic funds transfers therefore it is also
a covered "person" under EFTA. Reg. E, 12 C.F.R. § 1005.2(i).


12. On or about July 27-28, 2023, unknown identity thieves fraudulently obtained
certain electronic access devices from Defendant through the use of fraud and
artifice in order to later initiate three fraudulent electronic fund transfers from
Plaintiff's account (12 CFR § 1005.2(b)(1)) with Defendant, and such transactions
were subject to Regulation E and EFTA. See 12 C.F.R. § 1005.3(b)(1).

13. Plaintiff did not authorize or benefit from these fraudulent transfers from his accounts at Defendant's bank.

14.  Immediately upon discovering these fraudulent transfers, and within approximately eight hours of the last fraudulent transfer, Plaintiff alerted the security department of Defendant (1-800-869-3557).

15.  Plaintiff departed Houston, Texas, for New York City through Newark International Airport. I/He spent seven (7) days in New York City and departed from the United States of America on July 26, 2023, for Guyana, South America, and did not arrive at that destination until early on the morning of July 27, 2023. Attached is a page from my current U.S.A passport, enlarged for clarity, showing that I entered Guyana on July 26, 2023 (shown as 2023-07-26) and exited on September 01, 2023 (shown as 2023-09-01), **exhibit "A"**, incorporated herein by reference for all purposes.

16. On Friday, July 28, 2023, at about 7:20 pm (EST – Eastern Standard Time), I signed into my Wells Fargo account while in South America and noticed one electronic wire transfer (herein after referred to as EWT) in the amount of $9,264.17 made on July 27, 2023, at 12:58 PM and two pending EWTS in the amounts of $8,152.17 and $6,241.37 made on July 28, 2023. These EWTS were neither made by the Plaintiff nor authorized by him. I immediately called Wells Fargo Bank (hereafter referred to as WFB) and spoke to an employee who identified himself as Cee Casmiro (hereinafter CASMIRO). CASMIRO informed me that nothing could be done about the fraudulent transactions.  CASMIRO transferred my call to an employee identified as Destiny Strott (hereinafter STROTT), CASMIRO's supervisor. STROTT provided the same opinion. I hung

up and called again. This time, I spoke to an employee who identified himself as Angelo (hereinafter ANGELO) and who refused to provide his last name. ANGELO took my information and gave me provided me with a claim number 2023072800910 and stated it would take 10 business days to know anything further. CASMIRO, STROTT, and ANGELO informed the Plaintiff that the conversations were being recorded.

17. Plaintiff has suffered actual and concrete harm as a result of Defendant's violations of Reg E. and EFTA because he has been wrongfully deprived of his funds and Defendant's misconduct has caused his personal budget to be thrown into disarray.

18. Plaintiff explicitly told Defendant's security employees that he did not authorize Defendant's electronic fund transfers made to his checking account and that he disputed those charges.

19. Plaintiff checked his e-mail on July 28, 2023, in the evening at about 7:55 PM (EST) after reporting to WFB the unauthorized wire transfers. The plaintiff's e-mail shows WFB sent him confirmation initiations for Wire Electronic Funds (hereafter referred to as EWT) for $9,264.17 that was initiated on Thursday, July 27, 2023, at 11:58 PM. The e-mail also showed one confirmation for $8,152.17 EWT was initiated on Friday, July 28 at 10:09 AM, and an EWT confirmation for the $6,241.37 was initiated on Friday, July 28 at 12:01 PM for a total of $23,657.71. See exhibits **B**, **C**, and **D**, incorporated herein by reference for all purposes. In addition, there was an e-mail dated July 28, 2023, at 12:20 P.M. informing Plaintiff of potential fraud. Nobody from WFB called to notify me of this potential fraud. There were no other e-mails about these transfers.

20. There were also three e-mails labeled "Wells Fargo Wire Transfer Recipient Add" with the names Shana Ashby, Jacob Hocking, and Laura Lozano. See exhibits **E, F,** and **G** - incorporated herein by reference for all purposes. These persons are unknown to Plaintiff and have never been granted authority to make or receive EWTS from Plaintiff's accounts. I did not add these people to receive EWT from me nor do I know who they are.

21. Plaintiff timely disputed these unauthorized electronic funds transfers totaling $23,657.71 from his account by a telephone call from South America to Defendant on or about July 28, 2023, and repeatedly thereafter.

22. A review of exhibits # "**B**", # "**C**", and # "**D**" show that Defendant **violated** 15 U.S. Code § 1693d(a)(4) ("the identity of any third party to whom or from whom funds are transferred"); and violated 15 U.S. Code § 1693d(a)(5)("the location or identification of the electronic terminal involved"). These are the only emails I received about the fraudulent wire transfers.

23. To date, Plaintiff's demands that these $23,657.71 of unauthorized transfers from his bank account be returned to his account have been flatly rejected by Defendant, which in one correspondence on August 1, 2023, stated in pertinent part: "We've **completed our research** of your recent inquiry about three (3) wire transfer requests initiated through online banking totaling $23,657.71 between 07/27/2023 and 07/31/2023. After **reviewing all the information available to us** regarding the online wire transactions you are disputing, **we have determined** that **you** or someone using your username and password performed the transactions (bold added)". As a courtesy, we initiated a wire recall on your behalf to attempt

recovery of the funds. Unfortunately, the beneficiary bank responded that there were no funds available to return. As a result, we are unable to reimburse you and have closed your claim. A true and correct copy of this letter is attached hereto as **Exhibit "H"** - incorporated herein by reference for all purposes.

24.  The August 1, 2023, letter states (exhibit **"H"**) "After reviewing all the information available to us regarding the online wire transactions you are disputing, we have determined that you…..". The letter did not state what information it reviewed to determine that Plaintiff made the three EWTs.

25. The August 1, 2023, letter (Exhibit **"H"**) states, "We have determined ………. someone using your username and password performed the transactions." It did not state that I gave someone permission to use my username and password or I gave my username and password to someone.

26.  On August 10, 2023, at about 2:40 pm EST, the investigator, Mr. Edwin Valdana, called the Plaintiff in Guyana, South America.   He said WFB sent three SMS text with codes to my cell phone and these codes were imputed into the computer. He also told me that the EWT initiator of the three EWTs was in Houston, Texas, at the time the EWT were initiated.  I told Mr. Valdana that I was not in the USA on the relevant days, and I **received no text** from WFB during the relevant times on the relevant days (July 27-28, 2023).   He told Plaintiff to call T-Mobile and request their records about my cell phone being hacked.   This conversation was recorded pursuant to 18 U.S.C. 2511(2)(d).

27.  On August 11, 2023, Plaintiff remembered that you can send faxes online. He faxed Mr. Valdana a copy of the relevant pages of his passport to show he had not

been in the U.S.A. since July 26, 2023; a copy of the SMS text log from the T-Mobile Website of the relevant days to show Plaintiff did not receive any text with codes from WFB during the relevant days and times; and two screenshots of Plaintiff's cell phone of SMS text messages received Aug 10-11, 2023 to show the number **93557** shows on Plaintiff's phone when he received a text from WFB (attached hereto **Exhibit "I"** - incorporated herein by reference for all purposes). On August 14, 2023, I resent these documents plus screenshots of my cell to show that when T-Mobile sent an SMS text message with a customer the number "**462**" appeared as the text sending number (attached hereto **Exhibit "J"** - incorporated herein by reference for all purposes); "Wells Fargo's official short codes include: 93557, 93733, 93729, or 93236" (https://www.wellsfargo.com/privacy-security/ fraud/protect/fraud-tips/).

28. EFTA is a strict liability statute. See Bisbey v. D.C. National Bank, 793 F.2d 315, 318-19 (D.C. Cir. 1986); Sucec v. Greenbrier, Civil Action No. 5:11-0968, 3 (S.D.W. Va. Jul. 10, 2012) (".... any law allowing for statutory damages is by its nature a strict liability statute."). WFB **did not comply** with its mandatory duty to **inform** Plaintiff that he is entitled to request reproduction of the documents it relied on in determining no error occurred.  15 U.S. Code § 1693f(d) ( "The financial institution **shall** include notice of the right to request reproductions with the explanation of its findings.") The Defendant **violated** this law. Almon v. Conduent Bus. Servs., No. SA-19-CV-01075-XR, 30 (W.D. Tex. Mar. 25, 2022) (""the violation of a procedural right granted by statute can be sufficient . . . [and] a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified," ").

29.  In reviewing the three confirmation initiations for Wire Electronic Funds (exhibits "**B**", "**C**", and "**D**"), WFB **violated** 15 U.S. Code § 1693d(a)(4) ("the identity of any third party to whom or from whom funds are transferred"), and 15 U.S. Code § 1693d(a)(5)("the location or identification of the electronic terminal involved").

30. I received two letters from WFB dated September 26 and 28, 2023 (exhibits "**K**" and "**L**" - incorporated herein by reference for all purposes).   Both letters state "… agree this circumstance requires further research." The letters further stated that WFB is not going to do further research. It closed the case.  This is not a good faith investigation as EFTA demanded.

31. The two letters dated September 26 and 28, 2023 (exhibits "K" and "L") also state "Details confirming account compromise (ex., provide a letter from T-Mobile on company letterhead showing the customer did not participate or facilitate the change)".   Merriam-Websters Online Dictionary defines **confirming** as "to make firm or firmer: STRENGTHEN" (https://www.merriam-webster.com/dictionary /confirming). This definition means that WFB has a document showing that Plaintiff's T-Mobile account was compromised and WFB will **not** provide me a copy to support my request to T-Mobile for the letter requested.  The aim of EFTA is to promote disclosure. Foreman v. Bank of America, NA, 401 F. Supp. 3d 914, 921 "...some of the EFTA's substantive provisions **prescribe disclosure**...." bold added).

32. WFB fraud investigators are experts. They did not want a limited signed waiver from Plaintiff for his T-Mobile account giving them permission to discuss their

alleged unsubstantiated assertion of compromise.   This is not a good-faith investigation.

33. The two letters dated September 26 and 28, 2023 stated WFB has in its possession a copy of Plaintiff's T-Mobile  August 2023 customer's statement. This statement shows incoming and outgoing SMS text messages from July 18, 2023, to August 17, 2023 (attached as **exhibit "M"** - incorporated herein by reference for all purposes).

34. WFB knows that when a customer receives WFB's SMS text messages with a code the phone number 93557 appears as the sending number of the text (**exhibit "I"**).  WFB employees also know that for a T-Mobile customer to sign on to their account, they need a username, password, and the code sent to them via SMS text message.  WFB employees know that the number "462" shows as the incoming number when T-Mobile sends its customers an SMS text message with "code" (exhibit **"J"**).

35.  WFB performed a critical analysis of Plaintiff's August 2023 cell phone statement. This analysis reveals that Plaintiff received an SMS text at **3:21** pm on July 25, 2023, none on July 26 until **6:05 pm July 28,** 2023 from WFB.  The last EWT was initiated at **12:01 pm** July 28, 2023, six hours before **6:05 pm** July 28, 2023.   The SMS text with the code must be received before 12:01 PM July 28, 2023, for the EWT to be initiated.  The SMS text received at 6:05 pm July 28, 2023came when Plaintiff signed in to his account and learned about the fraudulent EWT.  WFB did not have a reasonable basis for believing that the consumer's account was not in error.

36.  The Plaintiff was not in the U.S.A. at the time the three EWTs were made which according to Edwin Valdana  were initiated in Houston. The Plaintiff did not receive the three SMS text messages with codes from WFB. His cell phone was physically located in Guyana as can be seen on page 5, bottom right hand side, of **exhibit "M"**. WFB did not have a reasonable basis for believing that the Plaintiff's account was not in error, § 1693f.

37.  WFB concluded from its critical analysis that Plaintiff did not receive the three SMS text messages with the codes because Plaintiff's T-Mobile account was compromised by him from July 26, 2023, to minutes before 6:05 pm July 28, 2023, and **un**compromised by him to receive a SMS text message with a code at 6:05 pm July 28, 2023. In effect, WFB is claiming that Plaintiff can compromise and **un**compromised T-Mobile computer system without T-Mobile knowing about it.

38.  Plaintiff was in Guyana from July 26 to September 1, 2023.  Guyana is technologically backward (Guyana is approximately 20 years behind the rest of the world in technology adaptation, Stabroek News November 2, 2020.)  The thought of anyone going to Guyana and compromising an advanced computer systems as those utilized by T-Mobile is laughable.

39.   WFB in its critical analysis of the August 2023 statement from T-Mobile, found no identifying code **"462"** (Exhibit **"M"**) from July 18, 2023 to July 31, 2023. There is one occurrence on August 1, 2023, showing that Plaintiff did receive an SMS text with an identifying code from T-Mobile on this date.  WFB apparently concludes that the Plaintiff can compromise T-Mobile's computer system without signing into his account and those T-Mobile computer experts do not have the intelligence (or expertise) to detect it. This is strongly reminiscent of

those magazine puzzles where the reader was challenged to `guess what is wrong with this picture.' See United States v. Garcia, 976 F. Supp. 2d 856 at 867 (N.D. Tex. 2013)("Only the incurable optimist, the ingenuous, or those who deliberately turn a blind eye would not have reason to believe that something is wrong with this picture. In other words, an objective observer, after reviewing all of the evidence, would recognize that "there's a dead cat on the line."); S.E.C. v. Graystone Nash, Inc., 25 F.3d 187, 191 (3d Cir. 1994) ("An adverse party in a civil case is not prevented from presenting evidence to the factfinder to support his own position even in the absence of testimony from the party invoking the privilege."). WFB does not have a reasonable basis for its action.

40. Exhibit **"Q"** states, in part, "We also **partnered** with legal …." **WFB attorneys took an oath to obey the laws in this Country.** For example, see Texas Gov't Code Section 82.037. See also ABA, Model Rules of Professional Conduct: Preamble & Scope ("**A lawyer's conduct should conform to the requirements of the law**..") (https://www.americanbar.org/groups/professional_responsibility/ publications/model_rules_of_professional_conduct/model_rules_of_professional_c onduct_preamble_scope/).

41. If WFB has any evidence (**versus unsubstantiated assertions**) that Plaintiff's T-Mobile account has been compromised and Plaintiff is a part of it, its attorneys are under a **mandatory legal** obligation to inform T-Mobile and report it to the FBI (Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(a)(4) ("knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud.. "); Branzburg v. Hayes, 408 U. S. 665, 696 (1972) ("**Concealment of crime** has been condemned throughout our history. The

**citizen's duty** to `raise the "hue and cry" and report felonies to the authorities", bold added); see also 18 U. S. C. § 4 (Misprision of felony).

42.   WFB's attorneys and fraud investigators did not perform their mandatory legal obligation and report 18 U.S.C. § 1030(a)(4) violations. They are taking steps active to conceal a crime. "The standard for the statutory willfulness requirement is the "voluntary, intentional violation of a known legal duty." Cheek v. United States, 498 U.S. 192, 202(1991). The reason for this is that WFB is making unsubstantiated assertions to deny Plaintiff's claim. WFB knowingly and willfully concluded that Plaintiff's account was not in error when such conclusion could not reasonably have been drawn from the evidence available to WFB at the time of its investigation.  See Boone v. United States, 944 F.2d 1489, 1496 (9th Cir.1991)) ("The district court could have concluded that a witness who will knowingly break the law is less trustworthy on the witness stand.") **Plaintiff denies that he committed any crime.** Through the F.B.I website he did report that WFB attorneys may have evidence of a Federal crime. See Jones v. Heckler, 702 F.2d 616, 620 (5th Cir.1983) ("Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."")   Plaintiff also reported, through the same method, the three fraudulent EWTs.

43. WTB records all phone conversations Plaintiff has with its employees. Defendant's **own record** shows that Plaintiff was calling from Guyana, South America to report the unauthorized wire transfers on July 28, 2023. The Defendant's **own record** reveals that the two wire transfers made on July 28, 2023, have not been completed (exhibits "B" and "C").  This can be seen from the July 2023, statement for the account number whose last four digits is shown ending *** 9035, (**exhibit "N",** incorporated herein by reference for all purposes).  This

statement reveals that $ 14,699.34 was transferred from an account number whose last four digits are shown ending *** 6110 on July 28, 2023. On this date, the two July 28, 2023 wire transfers were shown as pending when Plaintiff signed on to his account.  On July 31, 2023, these two wire transfers are showing as completed. The Plaintiff could have stopped the two July 28, 2023 transfers. Compare exhibits "B" and "C" with exhibit "N". Part of the account numbers were blocked out for security to Plaintiff's bank account.

44. Defendant's **own records** show that the person making the wire transfers was in Houston, Texas. Defendant's own records show that Plaintiff made **a mobile deposit** of $ 1200 (Mobile Deposit: Ref Number: 718250700107) into account whose last four digits are 6110 from New York City on July 25, 2023, while Plaintiff was in the State of New York on his way to Guyana, South America on July 26, 2023, attached as **exhibit "O"** - incorporated herein by reference for all purposes.

45.  WFB web page states, Under the heading  Gathering, using, and sharing information and sub-heading "Types of information", "You may interact with us in a variety of ways online, **including through** a **mobile device." "… location information**", ".. We may also gather additional information, such as the type of device and browser you are using, **the IP address of your device, information about your device's operating system**, and additional information associated with your device."  See **exhibit "P",** incorporated herein and made a part hereof by reference (https://www.wellsfargo.com/privacy-security/online/).

46.  WFB, using its geolocator software, knew the mobile deposit made on July 25, 2023 was made in New York.  WFB lawyers and Fraud investigators **never**

**reviewed** the record of the geolocation software of the mobile deposit made on July 25, 2023. If they had reviewed the geolocation record when Plaintiff signed to his account on July 28, 2023 at about 7:30 pm and compared it to the recorded conversations Plaintiff had with CASMIRO, STROTT, and ANGELO they would not have concluded that Plaintiff was in Houston to initiated the three EWTs as Plaintiff **can't be in two places** at the same time as implied in their August 1, 2023, letter. The August 1, 2023, letter (**Exhibit "H"**) stated, "**We have determined that you or someone using your username and password performed the transactions.**"  In a recorded conversation with WFB's fraud investigator Edwin Valdana, he said the person initiating the three fraudulent wire transfers were in Houston, Texas. WFB **refused to consider from its record** "[c]losely related and proposed or reasonably foreseeable actions that are related by timing or geography." Vieux Carre Prop. Owners, Residents, & Assocs., Inc. v. Pierce, 719 F.2d 1272, 1277 (5th Cir.1983).

47.  It is common knowledge, using a computer and the internet that it takes three and one-half hours to fly from Houston to New York JFK airport and five and one-half hours flying time from JFK to Guyana and the flight **don't leave until 4 pm** and arrive at 10:35 pm or later. There also lay over time and time to be processed through Guyana immigration. It is impossible for Plaintiff to be calling from Guyana to Defendant at or about 7:20 pm July 28, 2023 and was in Houston, Texas at 12:01to make the last EWT on July 28, 2023.

48.  The Defendant's **own records** reveal that it was not reasonable for an unbiased person to conclude that Plaintiff flew back to Houston from New York, made a wire transfer July 27, 2023, at 12:58 PM, and the last wire transfer July 28, 2023, at 12:01 PM and flew back to New York and continue to Guyana to called

WFB employees Cee Casmiro, Destiny Strott, and Angelo later in the evening of July 28, 2023 at about 7:30 pm when **the plane lands at about 10:35 pm or later**. The Defendant records all conversations a customer has with a WFB employee. During Plaintiff's conversation with WFB employees, he told them he was in Guyana, South America. The Defendant's **own** phone records will show that these three employees received phone calls from Guyana, South America on July 28, 2023 at or about 7:30 pm. It is not unreasonable for WFB's fraud investigators to **review its systems of records** to determine the physical location of the Defendant when the three EWTs were initiated. If the Plaintiff's physical location was not Houston, Texas, no reasonable mind would have concluded that the Plaintiff initiated the three EWTs as stated in Defendant's August 1, 2023, letter to the Plaintiff. This is especially correct since WTB computer system recorded the initiator's computer IP address from which WFB's fraud investigators determined the location of the EWT initiator's address. In addition, WFB computer system recorded the ip address and location of the computer Plaintiff used in logging on to his account at about 7:30 pm on the evening of July 28, 2023 and it was not from the U.S.A. This is supported by the recorded conversations of CASMIRO, STROTT, and ANGELO made by the Defendant as it is its usual practice of recording customer conversations with its employees.

49. Defendant's **own records** reveal that Plaintiff's history of making wire transfers has been to one person in Guyana, South America, and **never to anyone** in the U.S.A.

50.  WFB's computer system (**own record**) is designed to record the exact physical location in Houston of the computer that was used to make the three EWTs. It could have interviewed the individuals living there. WFB never talk to

those people.  It is physically impossible for Plaintiff to be in Houston and Guyana, South America at the same time.

51.  Page 5 (bottom right-hand corner under the heading "DATA") of Plaintiff's T-Mobile's August 2023 statement reveals the physical location of his cell phone as Guyana, South America on the relevant days.

52.  WFB knowingly and willfully concludes that the consumer's account was not in error when such a conclusion could not reasonably have been drawn from the evidence available to WFB **at the time of its investigation**.

53.  Defendant failed to obtain authorization from Plaintiff for these electronic fund transfers, as required by, and in violation of, Reg. E and EFTA. See 12 C.F.R. § 1005.10(b).

54.  WFB's actions show a lack of "good faith" investigation on the part of Defendant.  "Good faith" means more than merely going through the motions of investigating; it is inconsistent with a predetermined resolve not to budge from an initial position. But it is not necessarily incompatible with stubbornness or even with what to an outsider may seem unreasonable.  In an investigation, good faith implies a diligent, unbiased effort to follow genuine leads on every side of the issue. See "Good Faith Law and Legal Definition"  ("In an investigation, good faith implies a diligent, unbiased effort to follow genuine leads on every side of the issue."),  https://definitions. uslegal.com/g/ good-faith/; see also Suess v. Pugh, 245 F. Supp. 661, 668 (N.D. W. Va. 1965) ("....the Court must look at both sides in a broad rather than a narrow sense."); Sims v. Apfel, 530 U.S. 103, 110 ("It is the ALJ's duty to investigate the facts and develop the arguments both for and against

granting benefits".); Curtis v. Propel Prop. Tax Funding, LLC, 915 F.3d 234, 2239 (4th Cir. 2019))(".... EFTA are "remedial consumer protection statute[s]" which we "read liberally to achieve [their] goals" of protecting consumers."); Starks v. Orleans Motors, Inc., 372 F.Supp. 928, 932 (E.D.La.1974), aff'd mem., 500 F.2d 1182 (5th Cir. 1974) aptly stated: "Where the nature of an act is remedial, as here, it should be construed liberally in an attempt to provide the remedy, not avoid it."

55.   WFB's fraud investigators carry the C.F.E designation. See Society of Fin. Exam'rs v. National Ass'n of Certified Fraud Exam'rs, Inc., 41 F.3d 223, 225 (5th Cir.), cert. denied, 515 U.S. 1103. They know EFTA places the burden of proof on the financial institution to show that the consumer is liable for authorized transfers, 15 U.S.C. § 1693g(b) and 15 U.S. Code § 1693f(d).  These investigators know that refusing, "upon request of the consumer to **promptly** deliver or mail to the consumer reproductions of all documents which the financial institution relied on to conclude that such error did not occur" is **not a good-faith investigation**. See Almon v. Conduent Bus. Servs., No. SA-19-CV-01075-XR, 17, 32 (W.D. Tex. Mar. 25, 2022) ("In this case, the information Plaintiffs requested is protective of substantive rights afforded under the EFTA in at least two respects. First, the **investigative materials are the only evidence that the good-faith investigation mandated by the EFTA** actually occurred. In her order on Defendants' motion to dismiss the Georgia action, for example, Judge May concluded that Defendants' **failure to supply** Almon with the documents upon which they relied in **determining that no error occurred was sufficient to support his claim that Defendants had failed to conduct a good faith investigation**,  internal citation omitted. ") They "did not have a reasonable basis for believing that the Plaintiff's account was not in error". 15 U.S.C. § 1693f(e)(1) and exhibits "A" to "N".

56. A letter from WFB was received on November 22, 2023 (attached as **Exhibit "Q"** - incorporated herein by reference for all purposes). This letter is dated November 17, 2023. The letter mentioned October 4 and 5, 2023. The only attachment I sent on these dates was a business record affidavit from T-Mobile of my August 2023 statement (Exhibit "**M**"). Both the WFB legal department and Enterprise Complain Management rejected its probative value.   Melanie Frank's name is printed on the letter. She performed a critical analysis of the documents and as previously stated she has a legal duty to report computer fraud to Federal Law enforcement agencies.  She did not make such a report. It can be inferred that she rubber-stamped the decision of WFB's fraud investigators. See Cook v. Heckler, 750 F.2d 391, 393 (5th Cir. 1985)  ("This standard of review is not a rubber stamp for the Secretary's decision and involves more than a search for evidence supporting the Secretary's findings. We must scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the Secretary's findings."); Cheek v. United States, 498 U.S. 192, 202 (The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system. (internal citation omitted)  Based on the notion that the law is definite and knowable, the common law presumed that every person knew the law.")

57. The Plaintiff denies performing the disputed transactions. The Plaintiff also denies giving his username and password to anyone, and he also denies giving authority to anyone to use his username and password.  Plaintiff lives alone and rarely (perhaps once every two months) has visitors and then for only a very short time.

58. On October 12 and 13, 2023, Plaintiff **requested** from WFB the documents **relied on in determining** that **no error occurred** (attached as **exhibits "R" and "S"** - incorporated herein by reference for all purposes).   The word **promptly** was used in 15 U.S.C. § 1693f(d). The Supreme Court stated, "An example of **prompt** processing would be **within 14 days** of processing the request." Morales v. Trans World Airlines, Inc., 504 US 374, 415 - 1992.  Alaniz v. Sirius Int'l Ins. Corp., 626 F. App'x 73, 77 n.2 (5th Cir. 2015)(citing Texas cases where delays of 46 days, three months, and six months, were unreasonable as a matter of Texas law); Doherty v. Goslin, 2002 WL 32224695, *1-*2 (E.D. Pa. 2002) (The statute does not define **"promptly"** and the court found that an eighteen-day delay was **not** prompt).  **As of the filing of this complaint, the Plaintiff had not received the requested documents WFB relied on.** WFB violated 15 U.S.C. § 1693f(d).

59. WFB may argue that failure to comply with providing the documents and informing Plaintiff of the right to request reproduction of the documents it relied on can be cured during the error resolution process or discovery process. This cannot be cured during the error resolution process or the discovery process as this argument is not supported by the law as this is a failure to comply with the Act. See Bisbey v. D.C. Nat. Bank, 793 F.2d 315, 318 (D.C. Cir. 1986) ("This possible argument is patently flawed as these acts and omissions plainly constitute "fail[ure]s to comply" with the Act. They do not fall within the statutory definition of "error" for purposes of utilizing the error resolution procedures.  Civil liability attaches due to the "fail[ure] to comply" with the law." See Bisbey, 793 F.2d at 318.

60. Defendant made multiple electronic fund transfers from Plaintiff's bank account in July 2023, within the meaning of  Regulation E and EFTA, without

having first complied with the requirements of those federal laws. See 15 U.S.C. § 1693 and 12 C.F.R. § 1005.10.

61. Defendant's failure to obtain Plaintiff authorizations required by the EFTA, prior to instituting multiple electronic fund transfers from Plaintiff's bank account, constitutes a violation of the EFTA, 15 U.S.C. § 1693.

62. If a consumer alleges that an EFT is unauthorized, the **burden of proof** is on the financial institution to show that it was authorized or that the conditions for consumer liability have been met. 15 U.S.C. § 1693g(b).

63. Any person (not only a financial institution) who fails to comply with any EFTA provision is liable under 15 U.S.C. § 1693m for the sum of:
(1) Any actual damage sustained by the consumer;
(2) Statutory damages in an individual case of not less than $100 nor greater than $1000 or, in a class action, such amount as the court may determine, with a maximum of the lesser of $500,000 or 1% of the Defendant's net worth; and
(3) The costs of the lawsuit together with reasonable attorney fees. 15 U.S.C. § 1693m(a).

64. A second special EFTA remedy provision makes a financial institution liable for treble damages under 15 U.S.C. § 1693f(e) if it did not provisionally re-credit a consumer's account within ten days after receiving the consumer's notice of an error and either 1) did not conduct a good faith investigation or 2) did not have a reasonable basis for believing the consumer's account was not in error. 15 U.S.C. § 1693f(e)(1).

65. Defendant **never** provisionally re-credited Plaintiff's account.

66. Defendant also took immediate actions on July 28, 2023, after Plaintiff reported the fraudulent transfers, to close both Plaintiff's checking and saving accounts and open a new account for him with new account numbers, thus establishing beyond any doubt that Defendant was aware that Plaintiff was a victim of identity theft and fraud and that these transfers totaling $23,657.71 were fraudulent.

67. On July 28, 2023, WFB was well aware that these transfers were unauthorized and fraudulent, but nevertheless, four days later on August 1, 2023, blamed Plaintiff in bad faith, accusing him of transferring this $23,657.71 himself without a shred of evidence to support that defamatory assertion. See Exhibit "H" ("After reviewing all the information available to us regarding the transaction you are disputing, we have determined that the transaction was performed by you, or someone using your user name and password.")

68. Defendant knew that the statement it made victim-blaming Plaintiff for the loss of his $23,657.71 was false and had no basis in any fact or evidence.

69. Despite the fact that Defendant had up to 45 days to conduct a proper, fulsome, and good faith investigation of the circumstances surrounding the unauthorized transfers of this $23,657.71 in funds, Defendant instead simply sent out a form letter making a groundless blanket denial of Plaintiff's report of unauthorized claims, Exhibit "H".

70. Plaintiff received two letters from WFB. Both dated October 18, 2023.  Both of these letters stated as follows: However, we need more time to complete our research" (**exhibit "T"** – Wells Fargo Bank Case number 06202310**052656527** and **exhibit "U"-,** Wells Fargo case number 06202310**062663859** incorporated herein by reference for all purposes).

71. On December 3, 2023, via fax, Plaintiff had sent to WFB a written request to inquire if the Defendant was interested in **mediation,** (**exhibit "V",** incorporated herein by reference for all purposes) to avoid needless costs of litigation.  On December 12, 2023 a person who gives his name only as Victor from Wells Fargo Mediation Program called Plaintiff and inform him that WFB system don't mediate EFTA type of issues.

72. Exhibits "H", "K", "L", "Q", "T" AND "U contain the word "research".  This word carries the same meaning in all SIX documents.  They are referring to 15 U.S. Code § 1693f(d). Merriam-Webster Thesaurus online states that a synonym for "investigation" is "research" (https://www.merriam -webster.com/ thesaurus/ investigation). Department of Revenue of Ore. v. ACF Industries, Inc., 510 U. S. 332, 342 (1994)("We adhered to the "normal rule of statutory construction" that "identical words used in different parts of the same act are intended to have the same meaning.""). WFB is still conducting an investigation more than 10 business days after July 28, 2023. Exhibits "T" and "U" were dated October 18, 2023. It violated 15 U.S.C. § 1693f(e)(1). It did **not** provisionally **recredit** a Plaintiff's account.

73. Plaintiff **requested the documents** Defendant "**relied on to conclude that such error did not occur**". The Defendant **never provided him with any such**

**documents**, attached as exhibits "**R**" and "**S**" ", incorporated herein by reference for all purposes. Plaintiff suffered "**informational injury**" as a result of WFB action. Mabary v. Home Town Bank, N.A., 771 F.3d 820, 823-824 (5th Cir. 2014); Almon v. Conduent Bus. Servs., No. SA-19-CV-01075-XR, 31 (W.D. Tex. Mar. 25, 2022). " In such a situation, a procedural injury can become **constitutionally cognizable** when "a person lack[s] access to information to which [she or] he is legally entitled and the denial of that information creates a 'real' harm with an adverse effect."" Id at 31. Failure of WTB **to supply Plaintiff with the documents upon which WFB relied in determining that no error occurred is sufficient to support Plaintiff's claim that Defendants had failed to conduct a good faith investigation.** Id 32.


74. Defendant received oral notice of Plaintiff's dispute of an erroneous and fraudulent payment by Defendant from Plaintiff's account for $23,657.71 and therefore received sufficient information to identify Plaintiff by name and identify by number Plaintiff's account with Defendant.

75. Plaintiff never provided any person with permission, consent or authority to debit the fraudulent $23,657.71 funds from Plaintiff's account with Defendant.


76. Plaintiff never authorized the debits of the fraudulent funds from Plaintiff's account with Defendant.


77. Presently, Plaintiff remains without the $23,657.71 in funds debited from Plaintiff's account with Defendant without his knowledge, authorization, or benefit.

78. Defendant's affirmative conduct, and omissions, as more fully described herein, were done in violation of 15 U.S.C. §1693f(a)(3).

79. Defendant's conduct, as delineated above, is in violation of 15 U.S.C. §1693f(d).

80. Defendant's conduct, as delineated above, is in violation of 15 U.S.C. §1693f(e)(1).

74. As a result of Defendant's violations of EFTA, Plaintiff has suffered and continues to suffer mental anguish, emotional distress, and out-of-pocket damages.

81. The loss of these funds for several months has placed an extreme financial burden on Plaintiff and made keeping current on his bills more difficult.

82. The Official Staff Interpretations of the EFTA specifically state that **victims of robbery or fraud** who have their funds fraudulently transferred **are not liable** for those transfers under EFTA because they are "unauthorized" funds transfers: 2(m) Unauthorized Electronic Fund Transfer. Accordingly, the above-described conduct by Defendant in making its electronic fund transfers from Plaintiff was oppressive, deceptive, misleading, unfair, and illegal conduct, all done in violation of numerous and multiple provisions of the Reg. E and EFTA.

83. These actions taken by Defendant, and the employees employed by Defendant, were made in violation of multiple provisions of the Reg. E and EFTA, including but not limited to all of the provisions of those laws cited herein.

84. These violations by Defendant were, willful, negligent, and/or intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violations.

85. As the United Supreme Court commanded in Branzburg v. Hayes, 408 U. S. 665, 696 (1972) ("The citizen's duty to `raise the "hue and cry" and report felonies to the authorities"), Plaintiff reported to the F.B.I on November 25, 2023, via its website that Wells Fargo Bank, as stated in exhibits K and L (letters dated September 26 and 28, 2023, that WFB has documentary evidence that Plaintiff committed computer fraud. The Plaintiff denies that he committed computed fraud.

86. On November 25, 2023, Plaintiff reported to the F.B.I, via its website the three wire transfers fraud perpetuated on him on July 27 and 28, 2023, exhibits "B", "C", and "D".

## TRIAL BY JURY

87. Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so triable.

## CAUSES OF ACTION
## COUNT I.
## VIOLATION OF 15 U.S.C. §1693f(d)

88. Plaintiff incorporates by reference in this count all allegations set forth above in Paragraphs 1 through 87.

89. Defendant bears the burden of establishing that a transaction was authorized. § 1693g(b). Plaintiff was not in the U.S.A. or received SMS text messages containing codes from Defendant. WFB refused to provide any documents, as requested, to show there was no error. WFB did **not promptly** deliver or mail any documents or otherwise respond to the Plaintiff's records request.

90.  WFB did not comply with its mandatory duty to inform Plaintiff that he is entitled to request reproduction of the documents it relied on in determining no error occurred.  15 U.S. Code § 1693f(d).

91.  A review of exhibits # "B", # "C", and # "D" shows that Defendant violated 15 U.S. Code § 1693d(a)(4) ("the identity of any third party to whom or from whom funds are transferred"); and 15 U.S. Code § 1693d(a)(5)("the location or identification of the electronic terminal involved").

92.  Defendant fails to provisionally recredit Plaintiff's account even though it still conducting its investigation until November 17, 2023.

WHEREFORE, Plaintiff demands judgment against the Defendant, WELLS FARGO BANK, N.A., for actual damages, statutory damages of $1,000.00, expenses incurred prior to Plaintiff hiring an attorney, attorneys' fees and costs, and interest, plus any and all other relief this Honorable Court deems just and proper

COUNT II.

I5 U.S. Code § 1693f

93.  Plaintiff incorporates by reference in this count all allegations set forth above in Paragraphs 1 through 87.

(1) Defendant failed to observe the error resolution procedure of 15 U.S.C. § 1693f and Reg. E, 12 C.F.R. § 205.11 by:

(a) failing to conduct a timely and good-faith investigation;

(b) failing to have a reasonable basis for its action;

(c) failing to mail or deliver a timely written explanation of its findings;

(d) The Defendant knowingly and willfully concluded that the consumer's account was not in error when such conclusion could not reasonably have been drawn from the evidence available to it at the time of its investigation. The Defendant did not conduct a reasonable review of its records.

(e ) Defendant did not conduct a good faith investigation.

(f) Defendant fails to provisionally recredit Plaintiff's account even though it still conducting its investigation until November 17, 2023.

(g)  Plaintiff seeks treble damages.


WHEREFORE, Plaintiff demands judgment against the Defendant, WELLS FARGO BANK, N.A., for treble damages, expenses incurred prior to Plaintiff hiring an attorney, attorneys' fees and costs, and interest, plus any and all other relief  Honorable Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendant:

• For a judgment and decree that Defendant has engaged in the conduct alleged above, entering Judgment in favor of Plaintiff;

• for an award of actual damages pursuant to 15 U.S.C. § 1693m(a)(1) against Defendant and for Plaintiff;

• for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. §1693m(a)(2)(A) against Defendant and for Plaintiff;

• for an award of treble damages pursuant to 15 U.S.C. §1693f(e) against Defendant and for Plaintiff;

• for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692m(a)(3), expenses incurred prior to retaining an attorney against the Defendant and for the Plaintiff.

• for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692m(a)(3), expenses incurred prior to retaining an attorney against the Defendant and for the Plaintiff.

Respectfully submitted to the Honorable Court

Revaja Nazimuddin                    12-18-2023

Signature                                        Date

411 Mechanic ST., Tomball, Tx 77375    ph. 832-436-3451

## VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF TEXAS        )
                                      )
COUNTY OF HARRIS )

Pursuant to 28 U.S.C. § 1746, Plaintiff verifies, certifies, and declares as follows:

1. I am the Plaintiff in this civil proceeding and I am **not** an attorney.

2. I have read the above-entitled civil Complaint prepared by me and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.

3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.

**Page number 29 of 30**

6. Each and every exhibit which has been attached to this Complaint is a true and correct copy of the original. For security purposes Plaintiff blocked out parts of the account numbers.

7. I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations, one was enlarged for ease of reading, and account numbers partially blocked out.


I **swear under penalty of perjury** under the laws of the United States of America that the foregoing is true and correct.

Executed this 14 day of December 2023, at Tomball , Texas.

Khevaja Nazimuddin, Affiant


**SWORN TO AND SUBSCRIBED** before me on the 14 day of December , 2023.

_____
Notary Public, State of Texas

Notary's printed name: Cassandra Niles

My commission expires: 03/08/25

CASSANDRA NILES
NOTARY PUBLIC
STATE OF TEXAS
MY COMM. EXP. 03/08/25
NOTARY ID 13299033-4